*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* ROBINSON, Minors.

UNPUBLISHED
May 15, 2026
10:09 AM

No. 378012
Huron Circuit Court
Family Division
LC No. 2025-005133-NA

Before: TREBILCOCK, P.J., and CAMERON and LIEVENSE, JJ.

PER CURIAM.

Respondent-mother appeals as of right the ex parte order removing her three minor children, HR, RR, and AR, from her custody and care. On appeal, respondent argues that the trial court lacked the authority to issue the ex parte order in the absence of a petition or affidavit, which was not submitted until three days after the trial court issued the ex parte order. Alternatively, respondent argues the trial court clearly erred in issuing the ex parte order because it was supported by insufficient facts. For the reasons set forth below, we affirm.

## I. FACTUAL AND PROCEDURAL HISTORY

On October 23, 2025, respondent presented to the McLaren Thumb Region Hospital with RR and HR, her children who were both 19 months old at the time. The children had severe burns on their legs and feet that were consistent with being submerged in a bathtub of hot water. Medical providers also noticed the children were covered in bed bug bites. The treating physician and nurse at McLaren contacted Children's Protective Services (CPS), who interviewed respondent. Respondent admitted to CPS that she left the children unattended in the bath with water for 30 minutes but denied the water was hot.

The next day, on Friday, October 24, the Department of Health and Human Services (DHHS) sought, and the trial court issued, an ex parte "Order to Take Child(ren) into Protective Custody and Place" (ex parte order) under MCR 3.963(B)(4) as to all three of respondent's children, HR, RR, and AR. The court issued the ex parte order on the basis of a written summary, pictures of the children's injuries, a list of parenting resources that had been provided to respondent, and evidence that the children's father, who is not a party to this appeal, was in jail at

the time of the incident.[1] The ex parte order included the findings required under MCL 712A.14b(1)(a)-(e) and MCR 3.963(B)(1)(a)-(e). However, DHHS did not provide an affidavit or a proposed petition with the ex parte order as set forth in the statute and court rule.

In the order, the court found, among other things, that there was reasonable cause to believe the children were at a substantial risk of harm, that the children's immediate removal was necessary for their health and safety, that continuing to reside in their home was contrary to their welfare on the basis of specific information provided by DHHS, that no other remedy was reasonably available, and that reasonable efforts had been made to prevent the need for removal. *Id*. A page of facts was attached to the ex parte order that included additional information explaining why the children continuing to reside in the home was contrary to their welfare.

Upon issuance of the ex parte order, all three children were placed under DHHS's care and supervision. That same day the court appointed a lawyer-guardian ad litem (L-GAL) for the children and attorneys for respondent and the children's father.

The ex parte order does not say at what time it was signed, but it directed respondent and the children's father to appear at a preliminary hearing later that day, Friday, October 24, 2025, within the 24-hour period prescribed by MCR 3.965. At the hearing, an attorney appeared on behalf of respondent, and both respondent (in person) and the children's father (via Zoom) were present, although the father's attorney was not available. Respondent's counsel objected to the ex parte order and to proceeding because they had not received a petition or affidavit as required by MCR 3.963(B)(1) and because of perceived deficiencies in the materials supporting the ex parte order.

DHHS responded to the objections explaining why the ex parte order was factually and legally sufficient. DHHS also suggested that the hearing could be adjourned but asked that the ex parte order remain in place. The L-GAL agreed with DHHS's argument that the ex parte order was sufficient to keep the children in foster care but also agreed that more information and investigation was needed.

In response to these arguments, the trial court explained it signed the ex parte order to remove the three children because, on the basis of the information provided, the children would be in imminent risk of harm if they were to remain with respondent. The court concluded:

> there's more than enough for imminent risk of harm at this time. Based on the information which is listed in the contrary to the welfare, as well as . . . on the fourth page of the [ex parte order], as well as, all of the attached photos which were given to the Court . . . .

Rather than proceed with the hearing, however, the trial court adjourned it so that DHHS could submit a petition, the children's father's counsel could appear, and for further investigation. However, the trial court kept the children in custody pending the preliminary hearing, concluding:

---

[1] While not clear, the record suggests that the parenting resources may have been provided, at least in part, during prior interactions CPS had with respondent.

"in order to protect the children from imminent risk of harm, based on this [ex parte order], the Court is going to leave them in the care and custody of [DHHS] at this time."

DHHS signed and submitted a petition later that same day, and it was docketed on the next business day, Monday, October 27, 2025. The petition contained an extensive summary of respondent and the father's interactions with CPS dating back to January of 2024, soon after RR and HR were born, and continuing into late 2025, after AR was born. It also included additional information about RR and HR's visit to the hospital on October 23, 2025, that led to the ex parte order, including that HR and RR both had blistering from their severe burns, that HR would "lose her skin to the bottom and top of her feet," that they had to be transported to another hospital that could handle their injuries, and that respondent had provided more than one version of events about what had happened. The petition also contained additional information about and photographs of the children and the home environment on October 24, 2025. The petition sought removal because the "home or environment, by reason of neglect, cruelty, drunkenness, criminality, or depravity on the part of the parent, guardian, nonparent adult, or other custodian, is an unfit place for the [children] to live." See MCL 712A.2(b)(2). Respondent filed this claim of appeal as of right on October 27, 2025, challenging the ex parte order.

The preliminary hearing resumed on October 29, 2025, at which time respondent and the children's father via counsel waived the probable cause determination as to the factual allegations in the petition and the trial court found "probable cause that one or more of the allegations in the petition are true." After taking testimony from CPS as to the other relevant factors, the trial court authorized the filing of the petition under MCR 3.965 and placed the children with DHHS pending a later hearing.

## II. ANALYSIS

Respondent argues the trial court erred in entering the ex parte order without a petition or affidavit, or, alternatively, that it erred because the factual findings in the ex parte order were insufficient.

## A. STANDARDS OF REVIEW

This Court reviews de novo the application of statutes and court rules. *In re Ferranti*, 504 Mich 1, 14; 934 NW2d 610 (2019). "A trial court's factual findings are reviewed for clear error," and a finding is clearly erroneous if "an appellate court is left with a definite and firm conviction that a mistake has been made." *In re Benavides*, 334 Mich App 162, 167; 964 NW2d 108 (quotation marks and citation omitted). Even if an error occurred, it does not require reversal if it was harmless. See *In re Williams*, 333 Mich App 172, 181, 185; 958 NW2d 629 (2020) (applying harmless error review in a child removal case). Thus, to overcome harmless error review, "a party must show that an error was prejudicial such that a failure to grant relief would be inconsistent with substantial justice, i.e., that it is more likely than not that the error affected the case's outcome." *In re Miller*, 347 Mich App 420, 429; 15 NW3d 287 (2023).

## B. ISSUANCE OF THE EX PARTE ORDER

"It is well established that parents have a significant interest in the companionship, care, custody, and management of their children," a liberty interest protected by due process. *In re*

*Brock*, 442 Mich 101, 109; 499 NW2d 752 (1993). "The rights to notice and a hearing are due-process rights extended to the parent when a legal adjustment of this constitutionally protected relationship is made." *In re Williams*, 333 Mich App at 179 (citation omitted).

MCR 3.963(B)(4) permits ex parte orders removing a child from a parent and placing the child with DHHS. It states that DHHS "shall present to the court a petition or affidavit of facts and request a written ex parte order," and that, for an order to be issued, a judge or referee must find "all factors in subrule (B)(1)(a)-(e) are present," pending a preliminary hearing. MCR 3.963(B)(1)(a)-(e) specify the following:

> (1) Order to Take Child into Protective Custody. The court may issue a written order, electronically or otherwise, authorizing a child protective services worker, an officer, or other person deemed suitable by the court to immediately take a child into protective custody when, after presentment of a petition or affidavit of facts to the court, the court has reasonable cause to believe that all the following conditions exist, together with specific findings of fact:

> (a) The child is at substantial risk of harm or is in surroundings that present an imminent risk of harm and the child's immediate removal from those surroundings is necessary to protect the child's health and safety. . . .

> (b) The circumstances warrant issuing an order pending a hearing . . . .

> (c) Consistent with the circumstances, reasonable efforts were made to prevent or eliminate the need for removal of the child.

> (d) No remedy other than protective custody is reasonably available to protect the child.

> (e) Continuing to reside in the home is contrary to the child's welfare. [MCR 3.963(B)(1); see also MCL 712A.14b(1).]

Respondent first argues that the trial court erred when it issued the ex parte order without having received a petition or affidavit of facts. We agree that the trial court erred, but the error was harmless.

The trial court acknowledged that, when it entered the ex parte order, it had not received a petition, and it did not mention an affidavit. During the hearing on October 24, 2025, however, the trial court stated what had been relied upon when signing the ex parte order:

> The Court signed this based on the information that was given to the Court. Which is exactly what is in the [ex parte order]. The . . . and based on that information, the Court was finding imminent risk of harm to the children if they were to remain in the home with mother or father . . . well, with mother and with regards to father, he was unable to take the children, as he was in the county jail. So, that also makes it an inappropriate placement or place for the children to be removed to. So, that is why the Court signed this. I believe that there's more than enough for imminent risk of harm at this time. Based on the information which is listed in the contrary

-4-

to the welfare, as well as the . . . excuse me . . . on the fourth page of the [ex parte order], as well as, all of the attached photos which were given to the Court as well.

Reasonable efforts at this point have been made. These were also given to the Court and listed in the [ex parte order].

This was an error. MCR 3.963(4) requires that a "petition or affidavit of facts" be submitted before an ex parte order can be issued. See also MCL 712A.14b(1). Here, respondent brought HR and RR to the hospital on October 23, 2025, and authorities learned about HR and RR's circumstances on Friday, October 24, 2025. Neither an affidavit nor a formal petition was submitted before the court issued the ex parte order.

However, the trial court's error was harmless because the result was consistent with substantial justice, and it did not affect the case's outcome. *In re Miller*, 347 Mich App at 429 ("harmless-error rule, MCR 2.613(A), [] generally applies to civil proceedings—including child protective proceedings, see MCR 3.902"). While DHHS did not submit it in affidavit form, on the basis of the record, the trial court was provided with the information it relied on to enter the ex parte order, as contemplated by the court rule. At the initial preliminary hearing, the trial court heard from respondent and her counsel. The trial court ultimately adjourned the preliminary hearing for good cause shown and, later that day, DHHS signed and submitted a petition, which was docketed the next business day, Monday, October 27, 2025, before the preliminary hearing resumed. And two days later respondent waived her right to a probable cause determination, the trial court heard testimony, and it then issued an order authorizing the filing of the petition and placing the children with DHHS pending a later hearing.

If the trial court had not issued the ex parte order on October 24, and instead required a petition or affidavit, it is not clear what would have happened, though it is possible the children would have been ordered removed three days later, on October 27. The ultimate result, however, would have been the same. Thus, the error was harmless. See *In re Sanders*, 495 Mich 394, 405 n 3; 852 NW2d 524 (2014) ("While a petition is the ordinary route by which child protective proceedings begin, the juvenile code also recognizes that exigent circumstances can require immediate action.").

B. SUFFICIENCY OF THE FACTUAL FINDINGS IN THE EX PARTE ORDER

Respondent next argues that the trial court clearly erred by issuing the ex parte order because its factual findings were insufficient to support it. We disagree.

"A trial court is generally not obligated to articulate extensive findings regarding every conceivable detail." *In re Williams*, 333 Mich App at 183. "However, when a statute or court rule requires factual findings as to an enumerated list of factors, the trial court must make a record of its findings as to each and every factor sufficient for this Court to conduct a meaningful review." *Id*.

The trial court's factual findings were adequate to satisfy the requirements of MCR 3.963(B)(1) and MCL 712A.14(1). The court stated in its findings that it had "reasonable cause to believe" each of the required conditions enumerated by the court rule was present, and it made specific findings of fact on the basis of the information it had. Specifically, the factual

findings detailed the incident which led DHHS to seek the ex parte order: the injuries to the children, the services that had been provided to the family to prevent removal, and the fact that the children's father was in jail at the time. And the trial court did so using Form JC 05b, a form approved by the Supreme Court Administrative Office for handling these matters. See *In re Lafayette Towers*, 200 Mich App 269, 276; 503 NW2d 740 (1993) (approving use of SCAO-approved forms). These facts were sufficient to support the trial court's issuance of the ex parte order and were not clearly erroneous.

### III. CONCLUSION

While the trial court erred by issuing the ex parte order without a petition or an affidavit, the error was harmless. Additionally, the ex parte order satisfied MCR 3.963(B)(1) and MCL 712A.14(1). We affirm and the trial court may proceed as necessary.

/s/ Christopher M. Trebilcock
/s/ Thomas C. Cameron
/s/ Andrew J. Lievense